WILLIAM FLOCKHART v. HOCKING COAL CO., Appellant.

**Master and servant:** ASSUMPTION OF RISK: EVIDENCE. Where the unsafety of the place to work provided by the master can be discovered through a casual inspection by the servant, he is presumed to have a knowledge thereof and assumes the risk incident thereto. Under the evidence, it is held that a mine employé assumed the risk arising from an unballasted track.

*Appeal from Monroe District Court.*— HON. M. A. ROBERTS, Judge.

SATURDAY, FEBRUARY 11, 1905.

SUIT to recover damages for personal injuries. Trial to a jury, and verdict and judgment for the plaintiff. The defendant appeals.— *Reversed.*

*Geo. W. Seevers, A. C. Parry* and *T. B. Perry,* for appellant.

*N. E. Kendall,* for appellee.

SHERWIN, C. J.— At the time the plaintiff was injured he was a driver in the defendant's mine. He was an experienced driver, and had worked for the defendant in that capacity for several months before the injury was received. The track on which he was hauling coal at the time was a new one, having been put in use for that purpose only the morning of the day of the accident. There was a knuckle or high point in the entry through which this track ran, and, in taking a trip of loaded cars out, it was necessary to apply a sprag or brake to the car wheels before the trip had passed entirely over the knuckle. The plaintiff had made one round trip over this track, and had gone back to the face of the mine, and was returning to the bottom thereof with a trip of two loaded cars. When he reached a point a few feet from the knuckle, he stopped and spragged his trip for the purpose of controlling it when he reached the knuckle. He then remounted the trip, and went on until the forward car was over the knuckle, when he jumped down in front of that car, and undertook to stop the trip by bracing himself against it; but his toe caught under one of the rails, and he was thrown by the car and injured. The petition alleges that the track was not ballasted at the knuckle or on either side thereof for several rods, and that the defendant was negligent because of its failure to ballast and level it up with dirt or other material.

The defense was the assumption of the risk by the plaintiff and his contributory negligence. There is no serious

disagreement between counsel as to the law governing the case, and it presents but one fact question of importance. It is conceded by the appellant that it was its duty to furnish a reasonably safe place for the plaintiff to work, and there was evidence tending to show a failure in that respect. On the other hand, it is conceded by the appellee that it was his duty to exercise ordinary and reasonable care and observation in the use of the track. The ultimate question for determination is whether it should be said, as a matter of law, that the defendant did not use such care. There was no direct and positive evidence that the plaintiff knew that the track was unballasted, nor was such evidence necessary to defeat a recovery. The true test in cases of this kind is whether he ought to have known its condition, for, although he did not in fact know it, if he might have known it by the exercise of ordinary or reasonable care, it amounts to actual knowledge. *Haugh, Adm'r, v. C., R. I. & P. Ry. Co.,* 73 Iowa, 66; *Shebeck v. Nat. Cracker Co.,* 120 Iowa, 414; *Quinn v. Ry. Co.,* 107 Iowa, 710; 4 Thompson on Negligence, section 4647. The servant may assume that the master has provided a safe place where the defect is so hidden that its discovery would require special inspection. But where the defect is apparent to casual inspection, he is presumed to have knowledge thereof. *Quinn v. Ry. Co., supra,* and cases cited.

The plaintiff's mule was hitched to a singletree at the end of a tail chain that was from four to six feet long, and the opposite end of which was fastened to the car at a point about a foot higher than the rails. When riding the trip, the plaintiff placed one foot on the tail chain, and the other on the end of the car; and during all of the time in question he had a lighted lamp fastened to the front of his cap, which enabled him to see his mule and his trip. When he reached the knuckle with his first trip out in the morning, two other workers in the mine were there, each of whom also carried a lighted lamp, and one of whom spragged the

wheels for him just back of the knuckle. When the first car of this trip passed over the knuckle, the plaintiff jumped down in front of it at almost the identical spot where he alighted at the time he was hurt, and stopped it for one of the other men to finish spragging it. He testified that he did not know before the accident that the track was not ballasted; that he had not looked at it to see whether it was or was not ballasted, because it was not his business to do so; and that he could have seen its condition when riding on his trip and when spragging if he had looked at it. Giving to his testimony the most favorable construction that can be claimed for it, it is apparent that the most casual inspection or observation of the track would have disclosed its unballasted condition, and the possible danger to be apprehended there-from. The plaintiff was a driver of long experience, and knew the danger lurking in an imperfect track, and yet he shut his eyes and refused to see the obvious and plainly apparent condition which he alleges was the cause of his misfortune. We are of the opinion that his own testimony conclusively shows that he did not exercise the degree of care required by the law, and that the verdict should not stand.— *Reversed.*