STATE OF IOWA, Appellee, v. GEORGE MARISH, Appellant.

STATE OF IOWA, Appellee, v. VIDO BJOLOBRKOVICH, Appellant.

HOMICIDE: Included Offenses—Evidence Controls Submission. Even
1    though the evidence tends very strongly to show that the accused is guilty of murder as charged, yet, if there be fair warrant in the evidence for a finding that the accused did not commit the actual killing, but did make an assault on the deceased with felonious intent, then all forms of felonious *intent* must be submitted to the jury. So held where the court failed to submit assault with intent to do great bodily injury.

CRIMINAL LAW: Parties to Offense—Aiders and Abettors—Not
2    Necessarily Equal Guilt. One who aids and abets the commission of an offense,—an accessory before the fact,—while tried as a prin-

cipal, is not necessarily guilty of the same and identical offense of which the actual doer is guilty; and reversible error results from instructions that one who aids and abets is *equally guilty* with the actual perpetrator.

**HOMICIDE: Self-defense—Duty to Retreat.** Principle reaffirmed that
3   the taking of the life of an assailant cannot be justified on the ground of self-defense when it is evident to a person assaulted that the danger which appears imminent can be avoided by retreating from the conflict.

**CRIMINAL LAW: Reception of Evidence—Trial of Joint Defendants.**
4   In the trial of two joint defendants, testimony may very properly be received which bears solely on the guilt of *one* of the defendants, the court specifically instructing the jury not to consider the testimony in determining the guilt of the other defendant.

**CRIMINAL LAW: Trial—Rebuttal—Indorsement of Names.** Names
5   of witnesses used by the State on rebuttal need not be indorsed on the indictment.

**WITNESSES: Impeachment—Cross-Examination.** Persons testifying
6   to the general bad moral character of a witness may very properly be cross-examined as to the reputation of the witness as to truth and veracity.

*Appeal from Cerro Gordo District Court.*—M. F. EDWARDS, Judge.

SEPTEMBER 26, 1924.

THE defendants were separately indicted for murder. They were tried together by agreement, and found guilty of assault with intent to commit manslaughter. From judgments pronounced upon the verdicts, they appeal.—*Reversed and remanded.*

*Robinson & Boomhower* and *Senneff, Bliss, Wilwer & Senneff,* for appellants.

*Ben J. Gibson,* Attorney-general, *W. P. Butler,* County Attorney, *J. E. Williams,* and *R. S. Stanbery,* for appellee.

VERMILION, J.—The defendants were separately indicted,

charged with murder in the first degree, for the killing of one Pete Georgeovich. By agreement the two cases were consoli-

1. HOMICIDE: in-
cluded offenses:
evidence con-
trols submission.

dated for the purpose of trial, and tried together, resulting in verdicts finding both defendants guilty of assault with intent to commit man-slaughter.

It is without dispute that the defendants, on one side, and the deceased, with one Walter Myuscovich, on the other, became engaged in a fight on the street in Mason City, and that during the encounter Georgeovich was shot and killed. Five bullet wounds were found in his body. Of these, two were not fatal; two would not necessarily have been immediately fatal; and one would have caused immediate death. The order in which the wounds were received is not clear. There was evidence tending to show that both the defendants shot at Georgeovich both before and after he was down. After the conflict, he was found to be dead; but at just what instant death occurred, whether before or after all of the wounds were inflicted, is not shown.

There was a sharp dispute in the evidence as to how the conflict started, as to who were the aggressors, and as to whether the deceased and Myuscovich were armed. No claim is made that the evidence was not sufficient to sustain the verdicts. The errors assigned relate to the rulings on the admission of evidence and the instructions given by the court to the jury.

The jury was instructed that the defendants might be found guilty of murder in either the first or second degree, manslaughter, assault with intent to commit murder, or assault with intent to commit manslaughter. No lower offenses were submitted, and this is assigned as error. Without entering upon any detailed recital of the evidence, it will be sufficient, for the present purpose, to say that it was neither conceded nor conclusively shown that the wound or wounds causing the death of Georgeovich were inflicted by either of the defendants. While there was testimony from which it might well have been found that such was the fact, there is also testimony tending to show that, at the time deceased fell, he was between the defendants and Myuscovich, and the latter was shooting toward the defendants. The

fight occurred at night, and there was much confusion. There was testimony that as many as 15 or 16 shots were fired. The jury might have found, under the testimony, that the defendants made an assault upon the deceased, but might have failed to find that his death was caused by a wound inflicted by either of them. Under such circumstances, it is plain that the defendants might properly have been found guilty of an offense less than manslaughter, and that it was, therefore, proper to submit included offenses less than manslaughter. The verdict indicates beyond question that it was found that the defendants were guilty of a felonious assault, but not guilty of a felonious homicide. The situation does not call for any discussion as to when and under what circumstances the court, upon a trial of one charged with murder or manslaughter, should submit as included offenses the various grades of assault. That subject has been exhaustively considered and the authorities reviewed in the recent case of *State v. Shaver*, 197 Iowa 1028. Notwithstanding the writer's inability to agree with all that is said in that case, no difficulty is experienced in saying that, under the testimony presented here, included offenses below manslaughter were proper to be submitted. This is not, as we have seen, a case where it can be said that the defendants were guilty of manslaughter or nothing; and it does not, therefore, come within that class of cases where, the trial court having submitted lower offenses than the evidence required, and the defendant having been found guilty of a lower offense, it is held that he cannot complain because the jury was more lenient with him than the · evidence warranted.

The question is not as to the necessity of submitting offenses lower than manslaughter; it is narrower than that. Where the court, upon the trial of an indictment for murder, properly submitted assault with intent to commit murder and assault with intent to commit manslaughter, and the defendants were convicted of the latter crime, was it error not to submit the still lower offenses? If the defendants were guilty of an assault, the character of the assault would depend upon the intent with which it was committed. The intent of the perpetrators was a question for the jury. By what criterion could the court de-

termine that their intent was such as to make the crime assault with intent to commit manslaughter, rather than assault with intent to inflict a great bodily injury? The use of a deadly weapon would not necessarily so show, nor would the character of the wounds. It was clearly a question for the jury as to what wounds were inflicted by the defendants. The crime of an assault with intent to commit manslaughter, while somewhat anomalous in some aspects, is recognized as included in a charge of assault with intent to commit murder. *State v. White,* 45 Iowa 325; *State v. Postal,* 83 Iowa 460; *State v. McGuire,* 87 Iowa 142; *State v. Bunn,* 195 Iowa 9, and other cases there cited. Assault with intent to inflict a great bodily injury is also included in a charge of assault with intent to commit murder, and should be submitted when there is evidence to support a finding of guilt of the lower offense. *State v. Ockij,* 165 Iowa 237.

Where the circumstances are such, as in the instant case, that, upon an indictment for murder, it may be found that death did not result from the assault, and it is therefore proper to submit the lower offenses of felonious assault, it would seem clear that it is the province of the jury, and not the court, to determine the specific intent with which the assault was committed. It was error not to submit the offense of assault with intent to inflict a great bodily injury. Whether the still lower offenses of assault and battery and simple assault should also have been submitted, it is not necessary to determine. Upon a retrial, that question must be determined by the court upon the evidence then produced. *State v. Ockij,* supra.

Complaint is made of an instruction to the effect that all persons concerned in the commission of a public offense, whether directly committing the offense or aiding and abetting in its
2. CRIMINAL LAW: commission, are equally guilty; and that, if it parties to offense: be found that one of the defendants aided and aiders and abettors: not abetted the other in committing any of the of-necessarily equal guilt. fenses charged in the indictment, then the one so aiding and abetting the other would be equally guilty with the defendant who directly committed the crime. The instruction does not embody a correct statement of the law. The statute, Code Section 5299, abrogating the distinction between an

accessory before the fact and a principal, does not say that one who aids and abets another in the commission of an offense is equally guilty with the one who directly commits the act, but merely provides that he shall be indicted, tried, and punished as a principal. The guilt of one who aids or abets another in the commission of a crime must be determined upon the facts which show his part in it, and does not depend upon the degree of the other's guilt. *State v. Smith,* 100 Iowa 1; *State v. Wolf,* 112 Iowa 458; *State v. Phillips,* 118 Iowa 660; *State v. Pasnau,* 118 Iowa 501; *State v. King,* 198 Iowa 325. It is contended by the State that the instruction should be sustained on the theory that the evidence tended to establish a conspiracy between the defendants, and that a conspirator engaged in an unlawful act is responsible for the acts of his coconspirators done in pursuance of the common design. *State v. Munchrath,* 78 Iowa 268. The instruction was not dealing with a conspiracy, but with the degree of guilt of one who aided and abetted another in the commission of a felonious homicide or an assault. Cases having to do with one who aids and abets another in the commission of an offense without degrees, or where there is no lower offense included in the charge, are not in point.

Error is assigned on the giving of an instruction on the subject of self-defense. The particular portion of the instruction assailed is to the effect that, when it is evident to a person assaulted that the danger which appears imminent can be avoided in any other way, as by retreating from the conflict, the taking of the life of the assailant cannot be justified on the ground of self-defense. This is in accord with the holdings of this court. *State v. Jones,* 89 Iowa 182, 183; *State v. Warner,* 100 Iowa 260. Nor does the fact that the encounter took place upon a public street alter the rule. *State v. Jackson,* 156 Iowa 588; *State v. Dyer,* 147 Iowa 217.

3. HOMICIDE: self-defense: duty to retreat.

There was testimony tending to show that the defendant Bjolobrkovich had made threats against Myuscovich. Concerning this testimony the court instructed that it was for the jury to

say what weight, if any, should be given to it
**4. CRIMINAL LAW:** as against Bjolobrkovich, as bearing upon his
**reception of**
**evidence: trial** motives; but that it could not be considered for
**of joint de-**
**fendants.** any purpose as against the defendant Marish.
An admonition to the same effect was given the jury at the time
the testimony was admitted. There was no error in this.

Myuscovich was not called as a witness by the State in mak-
ing out its case in chief, and his name was not indorsed on the
indictment. He was called in rebuttal, and his testimony was,
**5. CRIMINAL LAW:** with considerable strictness, limited by the court
**trial: rebuttal:** to denials of statements and occurrences testi-
**indorsement of**
**names.** fied to by witnesses for the defendants. The
testimony was properly admitted. *State v. Maher,* 74 Iowa 77,
79; *State v. Munchrath,* supra.

Defendants, for the purpose of impeachment, introduced
witnesses who testified that the general reputation of the State's
witness Myuscovich as to general moral character was bad. On
**6. WITNESSES: im-** cross-examination, one of these witnesses was
**peachment:** permitted, over objection, to say that Myusco-
**cross-examination.**
vich's general reputation as to truth and ve-
racity was good. General moral character, as the term implies,
includes all the qualities that go to make up moral character.
Among these is truthfulness. The statute, Code Section 4614,
permits proof of the general moral character of a witness for
the purpose of testing his credibility. If one who testifies that
the general reputation of a witness for general moral character
is bad, bases his answer upon a knowledge of the reputation of
the witness as to some other trait than truthfulness, we think
this may be brought out on cross-examination.

Other errors assigned and argued are without merit.

For the reasons pointed out, the cases are—*Reversed and*
*remanded.*

ARTHUR, C. J., STEVENS and DE GRAFF, JJ., concur.